UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| STEPHANIE TABIBIAN and DANLEY ATKINS,<br><br>    Plaintiffs,<br><br>    v.<br><br>THE SECRETARY OF THE INTERIOR, through its Acting Assistant Secretary, BUREAU OF INDIAN AFFAIRS, its officers, servants, agents, employees, representatives, and attorneys,<br><br>    Defendants. | 3:15-CV-00253-LRH-WGC<br><br><br>ORDER |

Before the court is remaining Plaintiff Danley Atkins ("Atkins") Motion for Summary Judgment. Doc. #15 and 19.[1] Defendants filed an Opposition (Doc. #17) and a Cross-Motion for Summary Judgment (Doc. #18). Atkins filed an Opposition to the Cross-Motion for Summary Judgment (Doc. #20) and a Reply to the Opposition to the Motion for Summary Judgment (Doc. #21). Defendants filed a Reply to Atkins' Opposition to the Cross-Motion for Summary Judgment. Doc. #22.

**I. Facts and Procedural History**

This is an action under the Administrative Procedure Act (APA) that seeks judicial review of a non-eligibility determination made by the Secretary of the Interior's ("Secretary") designee regarding Atkins' eligibility for inclusion on the Western Shoshone Judgment roll. In 2004, Congress enacted the Western Shoshone Claims Distribution Act, Pub. L. 108-270, 118

---

[1] Refers to the Court's docket number.

Stat. 805 ("2004 Act").  The 2004 Act provided that the Secretary would establish a roll of eligible individuals and distribute the Western Shoshone Judgment funds to those individuals.  Eligibility for a distributive share of the fund is not tied to membership in any tribe shown on the list of federally recognized tribes, but instead was directed by Congress to be determined by a minimum ¼ blood quantum level.  On July 15, 2007, Atkins applied for inclusion on the Western Shoshone Judgment roll, claiming eligibility through his grandfather, Ed Atkins.  Ed Atkins needed to be a full blooded Shoshone for Atkins to satisfy the ¼ Shoshone blood quantum requirement.  The Bureau of Indian Affairs ("BIA") had previously determined that Ed Atkins was ½ Shoshone and ½ Paiute.  Given that determination, on September 1, 2010, the Regional Director of the BIA in Phoenix determined that Atkins did not establish that he possessed the requisite ¼ Western Shoshone blood quantum for inclusion on the Western Shoshone Judgment roll.  On October 6, 2011, the Assistant Secretary of the Department of the Interior for Indian Affairs affirmed that denial after Atkins filed an appeal.

Atkins filed his complaint on May 12, 2015.  Doc. #1.  On December 7, 2015, Atkins filed a motion for summary judgment.  Doc. #15.  Defendants filed a response and a cross-motion for summary judgment on January 19, 2016.  Doc. #17 and 18.  On January 20, 2016, Atkins filed errata to his motion for summary judgment.  Doc. #19.  On February 8, 2016, Atkins filed a response to the cross-motion for summary judgment and a reply to the opposition to summary judgment.  Doc. #20 and 21.  On February 22, 2016, Defendants filed a reply to the opposition to their cross-motion for summary judgment.  Doc. #22.

**II. Legal Standard**

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, affidavits or declarations, stipulations, admissions, and other materials in the record show that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Cnty. of Tuolumne v. Sonora Cmty.*

*Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).  A motion for summary judgment can be complete or partial, and must identify "each claim or defense—or the part of each claim or defense—on which summary judgment is sought."  Fed. R. Civ. P. 56(a).

The party moving for summary judgment bears the initial burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  On those issues for which it bears the burden of proof, the moving party must make a showing that no "reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  On an issue as to which the nonmoving party has the burden of proof, however, the moving party can prevail merely by demonstrating that there is an absence of evidence to support an essential element of the non-moving party's case.  *Celotex*, 477 U.S. at 323.

To successfully rebut a motion for summary judgment, the nonmoving party must point to facts supported by the record that demonstrate a genuine issue of material fact.  *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000).  A "material fact" is a fact "that might affect the outcome of the suit under the governing law."  *Liberty Lobby*, 477 U.S. at 248.  Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate.  *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983).  A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Liberty Lobby*, 477 U.S. at 248.  The mere existence of a scintilla of evidence in support of the party's position is insufficient to establish a genuine dispute; there must be evidence on which a jury could reasonably find for the party.  *See id*. at 252.  "[S]peculative and conclusory arguments do not constitute the significantly probative evidence required to create a genuine issue of material fact."  *Nolan v. Cleland*, 686 F.2d 806, 812 (9th Cir. 1982).

**III. Discussion**

Under the APA, a court may set aside an agency decision only if it is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  An agency decision is "arbitrary and capricious" if the agency (1) relied on a factor

3

that Congress did not intend it to consider, (2) failed to consider an important factor or aspect of the problem, (3) failed to articulate a rational connection between the facts found and the conclusions made, (4) supported the decision with a rationale that runs counter to the evidence or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise, or (5) made a clear error in judgment. *Cal. Energy Comm'n v. Dep't of Energy*, 585 F.3d 1143, 1150–51 (9th Cir. 2009). Agency action is valid if the agency considered the relevant factors and articulated a rational connection between the facts found and the choices made. *Lands Council v. McNair*, 629 F.3d 1070, 1074 (9th Cir. 2010). This requirement is not particularly demanding. *Pub. Citizen, Inc. v. F.A.A.*, 988 F.2d 186, 197 (D.C. Cir. 1993). Nothing more than a "brief statement" is necessary, as long as the agency explains "why it chose to do what it did." *Tourus Records*, 259 F.3d at 737. If the court can "reasonably discern[ ]" the agency's path, it will uphold the agency's decision. *Pub. Citizen*, 988 F.2d at 197 (citing *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 286, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974)).

A reviewing court may not reweigh the evidence before the agency. *See Lockheed Shipbuilding v. Director, OWCP*, 951 F.2d 1143, 1146 (9th Cir. 1991). The agency's factual findings are reviewed for substantial evidence and will not be disturbed unless the evidence presented would compel a reasonable finder of fact to reach a contrary result. *Herrera v. U.S. Citizenship & Immigration Servs.*, 571 F.3d 881, 885 (9th Cir. 2009). Where the agency has relied on "relevant evidence [such that] a reasonable mind might accept as adequate to support a conclusion," its decision is supported by "substantial evidence." *Bear Lake Watch, Inc. v. Fed. Energy Regulatory Comm'n,* 324 F.3d 1071, 1076 (9th Cir. 2003). If the evidence contained in the administrative record is susceptible to more than one rational interpretation, a reviewing court may not substitute its judgment for that of the agency. *Hensala v. Dep't of Air Force*, 343 F.3d 951, 955–56 (9th Cir. 2003). A court must also "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned ... [but] may not infer an agency's reasoning from mere silence." *Arlington v. Daniels*, 516 F.3d 1106, 1112 (9th Cir. 2008). The burden is

on the plaintiffs to show any decision or action was arbitrary and capricious.  *See Kleppe v. Sierra Club*, 427 U.S. 390, 412, 96 S.Ct. 2718, 49 L.Ed.2d 576 (1976).

Here, Atkins argues that the BIA was wrong to categorize Ed Atkins as ½ Paiute and that evidence shows that he was full blooded Shoshone.  He also notes that the Shoshone-Paiute Tribes of the Duck Valley Indian Reservation support his claim and argues that tribes have exclusive authority to determine membership issues.

Defendants argue that their determination that Ed Atkins was ½ Paiute and ½ Shoshone was appropriate.  In making that determination, they relied on Ed Atkins' statement, statements by several members of the Te-Moak Enrollment Committee and members of the Duck Valley Enrollment Committee, information that Ed Atkins' maternal uncle was listed on a historical census as full blooded Paiute, and a Certification of Indian Blood Degree from the Enrollment Clerk of the Duck Valley Reservation that showed him to be ½ Paiute and ½ Shoshone.  The Secretary then relied on that previous determination when determining that Atkins did not establish that he possessed the requisite ¼ Western Shoshone blood quantum for inclusion on the Western Shoshone judgment roll.  Defendant further notes, correctly, that eligibility for a distributive share of the fund is not tied to membership in any tribe shown on the list of federally recognized tribes but instead was directed by Congress to be determined by a minimum ¼ blood quantum level.  25 CFR § 61.4(k).

First, everything the BIA consulted in reaching its decision was proper evidence.  Contrary to Atkins' position that the BIA may examine only birth certificates, death certificates, baptismal records, copies of probate findings, or affidavits, the BIA is actually required to make an eligibility determination based on all available materials and information that are germane to the statutory eligibility criteria.  25 CFR § 61.9 provides that:

> The burden of proof rests upon the applicant or tribal member to establish eligibility for enrollment. Documentary evidence *such as* birth certificates, death certificates, baptismal records, copies of probate findings, or affidavits, *may be used* to support claim of eligibility for enrollment. Records of Bureau of Indian Affairs may be used to establish eligibility.

5

25 CFR § 61.9 (italics added).  This is not an exhaustive list of the types of materials the BIA may utilize in reaching a decision, and, contrary to Atkins' point, section 61.9 specifically mentions BIA records as a way of reaching an eligibility determination, which the BIA relied on here.  Further, 25 CFR § 61.11(a) specifically requires the Secretary to consider "all documentation" when making a decision.  Similarly, 25 CFR § 61.4(k)(2), which describes the process for evaluating Western Shoshone eligibility applications, provides that "Indian census rolls prepared by the Agents or Superintendants at Carson or Western Shoshone Agencies between the years of 1885 and 1940, and other documents acceptable to the secretary will be used in establishing proof of eligibility of an individual."  25 CFR § 61.4(k)(2).  Thus, the Secretary relied on appropriate evidence, and the determination was not arbitrary and capricious on that ground.

Second, there is a clear rational connection between the facts found and the choices made by the BIA.  The BIA had evidence, including statements from Ed Atkins, that he was ½ Shoshone and ½ Paiute.  The BIA previously determined that Ed Atkins was ½ Shoshone and ½ Paiute.  Thus, there is a logical connection between that evidence and that previous determination and the conclusion that Atkins did not meet the required blood quantum level because Ed Atkins was not a full blooded Shoshone.  The agency repeatedly explained the basis for its decision, for example stating in the final determination letter that it came to the decision after examining "a blood degree determination for John Atkins and Maude Jim based on probate testimony, research of the Te-Moak and Duck Valley Enrollment Committee members, a determination that Ed Atkins was determined eligible to participate as a descendant in the judgment awarded to the Northern Paiute in Docket 87, and the preponderance of the evidence on file at the Western Regional Office."  This more than satisfies the requirement of a brief statement explaining why the agency chose to do what it did, and it clearly allows the court to reasonably discern the agency's path.  If the court can reasonably discern the agency's path, it will uphold the agency's decision.

Additionally, the substantial evidence requirement is also satisfied here.  While there is contradictory evidence in this case, there is also relevant evidence that a reasonable mind would

accept as adequate to support a conclusion, like the previous determination of Ed Atkins' blood status, and a court may not substitute its judgment for that of the agency in such a case. What is important is not the existence of conflicting evidence, but rather the existence of evidence supporting the agency's reasoning. *See Modesto Irrigation Dist. v. Gutierrez*, 619 F.3d 1024, 1036 (9th Cir. 2010). "When an agency has considered relevant evidence and arrived at a rational result, a party's mere dissatisfaction with the agency's decision does not entitle it to relief." *Cent. S. Dakota Co-op. Grazing Dist. v. Sec'y of U.S. Dep't of Agric.*, 266 F.3d 889, 898 (8th Cir. 2001)

Ultimately, while Atkins' argument may have merit, courts "must defer to a reasonable agency action 'even if the administrative record contains evidence for and against its decision.'" *Modesto Irrigation Dist. v. Gutierrez*, 619 F.3d 1024, 1036 (9th Cir. 2010) (quoting *Trout Unlimited v. Lohn*, 559 F.3d 946, 958 (9th Cir. 2009)). Here, there is ample evidence in the administrative record supporting the Secretary's decision that Atkins does not have the required ¼ degree of Western Shoshone blood. From that, the Secretary's reasoning can be easily discerned linking the conclusion to the factual findings, and thus, the conclusion warrants deference. *See Arkansas v. Oklahoma,* 503 U.S. 91, 112, 112 S. Ct. 1046, 1060, 117 L. Ed. 2d 239 (1992). Thus, the BIA's decision should be affirmed.

**IV. Conclusion**

IT IS THEREFORE ORDERED that Defendant's Cross-Motion for Summary Judgment (Doc. #18) is GRANTED. The clerk of court shall enter judgment in favor of Defendant, and against Atkins.

IT IS FURTHER ORDERED that Atkins' Motion for Summary Judgment (Doc. #15 and 19) is DENIED.

IT IS SO ORDERED.

DATED this 11th day of March, 2016.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE